# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Christian Alvarado, | Case No.: 2:26-cv-00416-APG-DJA |
| Petitioner | **Order Granting in Part Petition for Habeas Corpus** |
| v. | [ECF No. 7] |
| John Mattos, et al.,[1] | |
| Respondents | |

Christian Alvarado is a noncitizen currently detained by Immigration and Customs Enforcement (ICE). ECF No. 7 at 1.  He entered the United States in 2005 without inspection from El Salvador. *Id.* at 4.  In 2020, he was arrested for burglary, and in 202, he was arrested for larceny. ECF No. 10-1 at 7.  These arrests resulted in convictions for attempted home invasion and destroying the property of another in 2022. *Id.* at 8.  Alvarado was arrested again in June 2025 for arson for what he alleges was assisting a friend by burning trash on the friend's property. *Id.* at 7; ECF No. 7 at 4.  He was subsequently transferred to ICE custody at the Nevada Southern Detention Center. ECF No. 7 at 3-4.  At some point, he applied for asylum. *Id.* at 4.

The Department of Homeland Security (DHS) issued Alvarado a Notice to Appear, alleging that he was subject to removal under § 212(a)(6)(A)(i) of the Immigration and Naturalization Act (INA) as an alien present in the United States who had not been admitted or paroled. ECF No. 10-1 at 2.  At a hearing before an Immigration Judge in September 2025, Alvarado asked about potentially being released. ECF No. 7-1 at 6.  The Immigration Judge

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Attorney General Todd Blanche is substituted for Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem.

responded that "very recently the Appeals Court whose decisions [she has] to follow says that unless an individual has been admitted to the United States, [she does] not have the authority to release them on bond." *Id.*  A month later, the Immigration Judge denied Alvarado's asylum application and ordered him removed to El Salvador. ECF No. 10-1 at 10, 12.  Alvarado timely appealed that order and has yet to receive a decision. *Id.* at 24; ECF No. 7 at 4.  He remains detained today without having received a bond hearing. ECF No. 7 at 2.

Alvarado filed this petition for habeas corpus, seeking his immediate release or an individualized bond hearing under 8 U.S.C. § 1226(a).  There are two grounds for his petition.  First, he argues that he cannot be mandatorily detained under 8 U.S.C. § 1225(b)(2)(A), and instead § 1226(a) governs his detention, which entitles him to a bond hearing.  Second, he asserts that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.

The government responds[2] that he is properly detained under § 1225(b)(2)(A), which does not allow for a bond hearing nor offend due process.  The government's position on § 1225(b)(2)(A) reflects its new interpretation of the statute as outlined by interim guidance issued by DHS in July 2025. Interim Guidance, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX.  The Board of Immigration Appeals adopted the government's interpretation in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025).  The government argues also that the Laken Riley Act (LRA), specifically § 1226(c)(1)(E)(ii), mandates his detention due to his arrests for burglary and larceny.  Additionally, the government contends I lack jurisdiction over Alvarado's petition under 8 U.S.C. § 1252, and that Alvarado's

---

[2] The government incorporates by reference its response to the habeas petition in *Jacobo Ramirez v. Noem*, No. 2:25-cv-02136-RFB-MDC, ECF No. 39 (D. Nev. Dec. 3, 2025).

2

petition is not ripe for review because he has not formally requested a bond redetermination hearing before an Immigration Judge.

The best reading of § 1225 is that it applies only in the border context, and accordingly § 1226 governs Alvarado's detention. The LRA, passed in 2025, does not retroactively apply to Alvarado's arrests in 2020 and 2022 and thus does not mandate his detention today. Therefore, I grant in part his petition for habeas corpus and order that he must be provided with an individualized bond hearing under § 1226(a).

**I.      DISCUSSION**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**A.  I have jurisdiction over Alvarado's petition, and the petition is ripe.**

Alvarado cites 28 U.S.C. § 2241 to establish that I have jurisdiction to determine the legality of his detention. The government argues that 8 U.S.C. §§ 1252(g) and (b)(9) preclude

review of his petition.  I have previously rejected the government's position, and I do so again here. *Rodriguez v. Mullin*, No. 2:26-cv-00531-APG-NJK, 2026 WL 895685, at *2 (D. Nev. Apr. 1, 2026).  I incorporate by reference my analysis regarding §§ 1252(g) and (b)(9) in *Rodriguez* and hold that I have jurisdiction to consider Alvarado's petition.

The government also argues that this petition is not ripe for review because Alvarado has not formally requested a bond redetermination proceeding before an Immigration Judge.  But the government does not cite any law requiring a noncitizen detainee to request a bond redetermination before filing a habeas petition to remedy unlawful detention.  Alvarado is suffering an injury in fact due to his current detention, so his petition is ripe for review. *Galvan v. Hermosillo*, No. 2:25-cv-02349-TMC, 2025 WL 3484755, at *2 (W.D. Wash. Dec. 4, 2025) (finding the noncitizen detainee's habeas petition was ripe even though an Immigration Judge had not yet determined his eligibility for bond).

To the extent the government meant that Alvarado needs to exhaust his administrative remedies before filing his petition, he does not.  First, "[n]o relevant statute commands administrative exhaustion within this context." *Bartolon v. Bondi*, --- F. Supp. 3d ----, No. 1:25-cv-747, 2025 WL 3674604, at *7 (S.D. Ohio Dec. 18, 2025); *see* 8 U.S.C. § 1226; 8 C.F.R § 236.1.  Second, the Ninth Circuit has held that, in the absence of a statute explicitly requiring exhaustion, courts may nonetheless require prudential exhaustion after weighing certain factors. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).  But I may waive the exhaustion requirement if "pursuit of administrative remedies would be a futile gesture." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotation omitted).  Here, even if the factors weigh in support of requiring prudential exhaustion, Alvarado pursuing his administrative remedies would be futile.  The Board of Immigration Appeals has adopted the government's interpretation of

§ 1225(b)(2)(A) to deny bond hearings to noncitizens like Alvarado. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216.  This decision is binding on Immigration Judges.  The Immigration Judge overseeing Alvarado's case already told him she does not have authority to release him on bond, seemingly in reference to *Matter of Yajure Hurtado*.  Therefore, I will consider Alvarado's petition.

**B.  Section 1226, not 1225, governs Alvarado's detention.**

The parties dispute whether § 1225 or § 1226 of the INA governs Alvarado's detention.  I have previously rejected the government's position, and I do so again here. *Rodriguez*, 2026 WL 895685, at *2-4.  Section § 1225(b)(2)(A) governs only inspections at the United States' international borders and thus cannot justify the detention of a noncitizen, like Alvarado, detained within the country.  Instead, § 1226 governs the detention of noncitizens found within the country.  As I did in *Rodriguez*, I incorporate by reference sections IV, VI.C.1, 2, and 4 of *Jacobo Ramirez v. Mullin*, No. 2:25-cv-02136-RFB-MDC, 2026 U.S. Dist. LEXIS 67643 (D. Nev. Mar. 30, 2026), regarding the text and structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and prior agency practice and major questions implications for DHS's change in policy. 2026 U.S. Dist. LEXIS 67643 at *14-22, 29-75, 85-90.  Additionally, I note that applying § 1226 to noncitizens residing within the United States, such that they may be eligible for a bond hearing under § 1226(a), is consistent with the longstanding distinction found throughout immigration law that "recognizes arriving noncitizens have less due process protections than those present and residing within the country's borders." *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1154 (D. Nev. 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001)).  Further, I reject the government's argument that I should adopt the Fifth

5

Circuit's reasoning in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026) for the reasons I stated in *Rodriguez*. 2026 WL 895685, at \*4.

The fact that Alvarado is appealing the denial of his asylum application does not mean he is "seeking admission" under § 1225(b)(2)(A). Applying for asylum is seeking legal status in, not admission into, the country. *Rodriguez*, 2026 WL 895685, at \*4 (citing *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021)). Therefore, because Alvarado was detained within the United States, far from the border context, years after he physically entered the country, § 1226 governs his detention.

**C. The LRA does not apply retroactively to require Alvarado's detention due to his prior arrests.**

The parties dispute whether the LRA mandates Alvarado's detention because of his burglary arrest in 2020 and larceny arrest in 2022.[3] The LRA states that "[t]he Attorney General shall take into custody any alien who" is inadmissible under certain provisions of § 1182(a) and "is arrested for . . . acts which constitute the essential elements of any burglary . . . [or] larceny." 8 U.S.C § 1226(c)(1)(E)(ii). Alvarado argues that the LRA does not apply retroactively to arrests which occurred before its passage in January 2025. Pub. L. No. 119-1 § 2, 139 Stat. 3 (2025).

Under the "principle against retroactive legislation, . . . courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (citing *Landgraf v. USI Film Prods.,* 511 U.S. 244 (1994)). "[*Landgraf*] controls the analysis of retroactivity for federal civil litigation." *Ratha v. Rubicon Res., LLC*, 168

---

[3] The government does not argue that Alvarado's convictions for attempted home invasion and destroying the property of another mandate his detention under § 1226(c).

6

F.4th 541, 549 (9th Cir. 2026). To decide whether a statute applies retroactively, I first assess "whether Congress has expressly prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280. If the statutory text "explicitly include[s] a retroactive effective date," I must "honor" it. *Ratha*, 168 F.4th at 549. But when there is no retroactive effective date, I determine whether the statute "would have retroactive effect." *Landgraf*, 511 U.S. at 280. If it does, I apply the principle against retroactive legislation unless there is "clear congressional intent" otherwise. *Id.*; *Ratha*, 168 F.4th at 549.

The LRA does not explicitly include a retroactive effective date. Thus, I must decide whether it would have retroactive effect under *Landgraf*. "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *St. Cyr*, 533 U.S. at 321 (simplified). This inquiry "should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* (simplified). The LRA imposes a new legal consequence for noncitizens arrested for theft crimes: mandatory detention. Prior to the LRA's enactment, arrest for burglary or larceny was insufficient to trigger mandatory detention under § 1226(c). *See* 8 U.S.C. § 1226(c)(1)(A), (B), (C) (2024) (requiring detention of a noncitizen who has "committed" or been convicted of certain offenses). When Alvarado was arrested, he did not have fair notice that his arrests may later mandate his detention in immigration custody. Thus, the LRA would have retroactive effect if applied to him. *Matute v. Jamison*, No. 2:25-cv-07093, 2026 WL 461557, at *6 (E.D. Pa. Feb. 18, 2026).

Not only does the LRA lack indica of Congress's intent to apply it retroactively, but its language also shows Congress instead intended it to apply only prospectively. *Id.* at *5. The LRA applies to a noncitizen who "is charged with, is arrested for, is convicted of, admits having

7

committed, or admits committing acts which constitute the essential elements" of certain theft offenses, among other crimes. 8 U.S.C. § 1226(c)(1)(E)(ii).  It also mandates the government detain the noncitizen "when the alien is released." *Id.* at § 1226(c)(1).  Its use of verbs in the present tense suggests it was not meant to apply to arrests prior to its enactment. *Matute*, 2026 WL 461557, at *5; *see United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress's use of a verb tense is significant in construing statutes.").  When interpreting statutes, "the present tense generally does not include the past." *Carr v. United States*, 560 U.S. 438, 448 (2010).  If Congress intended otherwise, it could have written language that clearly encompassed past arrests. *See Biden v. Tex.*, 597 U.S. 785, 798 (2022) ("If Congress had wanted to provision to have [the] effect [argued by the government], it could have said so in words far simpler than those that it wrote.").  For example, other provisions of the INA "expressly direct retroactive application," such as § 1101(a)(43) which defines "'aggravated felony'" to include "'conviction[s] . . . entered before, on, or after' the statute's enactment date." *Vartelas*, 566 U.S. at 267 (quoting 8 U.S.C. § 1101(a)(43)); *see St. Cyr*, 533 U.S. at 319 n.43 (listing further examples in the INA where Congress clearly stated the provision applied retroactively).  But the LRA does not include this kind of language.

Further, applying the LRA retroactively is inconsistent with the statute's mandate that the government detain the applicable noncitizen "when the alien is released." 8 U.S.C. § 1226(c)(1). Courts have understood this language to require the government to detain the noncitizen immediately after his release. *Matute*, 2026 WL 461557 at *6 (citing cases).  To interpret the LRA as retroactive would be to extend a noncitizen's release time to be a "period of years," stretching the language "when the alien is released" beyond its plain meaning. *Id.*

The Supreme Court has rejected retroactively applying different provisions of the INA that attached adverse consequences because of criminal histories that predated the provisions.  In *Vartelas*, a lawful permanent resident pleaded guilty to a felony in 1994. 566 U.S. at 260.  Two years later, Congress amended the INA to authorize removing lawful permanent residents convicted of such felonies when they travel abroad and return to the United States. *Id.*  The Supreme Court held that, despite the petitioner's conviction, the amendment did not retroactively apply to him and thus his foreign travel could not justify his removal when he returned to the country. *Id.* at 261.

Therefore, the LRA is not a retroactive statute and does not mandate Alvarado's detention due to his burglary and larceny arrests.  Accordingly, Alvarado is not subject to detention without a bond hearing.

**II.    CONCLUSION**

I THEREFORE ORDER that petitioner Christian Alvarado's petition for writ of habeas corpus **(ECF No. 7) is GRANTED in part**.

I FURTHER ORDER the respondents to provide Alvarado with an individualized bond hearing under  8 U.S.C. § 1226 and 8 C.F.R. § 236.1(d) by April 16, 2025.

I FURTHER ORDER that respondents are PERMANENTLY ENJOINED from denying Alvarado the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

/ / / /

/ / / /

/ / / /

/ / / /

9

I FURTHER ORDER the parties shall file a Joint Status Report by April 21, 2026 confirming compliance with this order.  The status report must detail regarding when the ordered bond hearing occurred, whether bond was granted or denied, and if denied, the reasons for that denial.

DATED this 9th day of April, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

10